## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SHANE KENNEDY,

      Plaintiff,

      v.

PRIMECARE, INC., *et al.*,

      Defendants.

CIVIL ACTION NO. 1:24-cv-00841

(SAPORITO, J.)

## <u>MEMORANDUM</u>

Plaintiff Shane Kennedy, presently incarcerated at the State Correctional Institute at Chester ("SCI-Chester"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He seeks leave to proceed *in forma pauperis*. Kennedy alleges that while incarcerated at the York County Prison, he was denied adequate medical care and did not receive appropriate accommodation for preexisting injuries. As pled, the complaint properly states a claim against one defendant, identified only as Jane Doe. Accordingly, the Court will direct service of the complaint on the Warden of the York County Prison, for the limited purpose of ascertaining the defendant's identity.

## I.  BACKGROUND

Kennedy's complaint (Docs. 12, 12-1)[1] alleges as follows: On December 10, 2022, before he was incarcerated, he suffered a work accident that left him with a broken foot, concussion, lacerations to his head and ribs, and a sprained and bruised back. On January 17, 2023, he was arrested and taken to the York County Prison. During the intake process, he told Jane Doe, a nurse from PrimeCare Medical, Inc. ("PrimeCare"), the prison medical provider, that he had a broken foot and injuries to his back and ribs. However, PrimeCare "released [Kennedy] to General Population with no restrictions, [despite Kennedy] complaining about his severely injured foot that was in serious pain." Kennedy alleges that "no support was given [for these injuries] for the entire duration of his stay" at the York County Prison.

For intermittent periods between January and March 2023, Kennedy was assigned to sleep on a top bunk. There was no ladder on the bed, so Kennedy repeatedly had to jump off the bunk to the concrete floor, which caused him pain and "further injur[ed]" his broken foot. During

---

[1] The Court ordered Kennedy to refile his original complaint (Doc. 1) because he had not signed it. *See* (Doc. 11).

this time, Kennedy informed "the Medical Department," and several correctional officers[2], about his broken foot. On February 8, 2023, he told Lt. Jensing and Jane Doe that he had a broken foot and "can't be housed on the top bunk," removing his shoe and sock to show that his foot was "clearly noticeably broken." However, they took no action. On February 9, 2023, he made a similar complaint to C.O. Mink, who said there was nothing he could do because he was "not in charge of the moves." On February 24, 2023, he complained to unspecified correctional officers, who told him that "Medical" and "Classification" determine whether a person should be placed on the top bunk. Multiple officers told Kennedy that they informed "Medical" about his broken foot. A different, unnamed officer told him that "if he didn't take [the top] bunk he would go to the BAU to get re-classified and that could take up to five (5) days." Kennedy does not say whether he pursued this option.

On March 12, 2023, Kennedy "had an incident where his back gave

---

[2] The Court denies Kennedy's request for an order directing that body camera footage of his discussions with correctional officers be preserved. In general, a party's obligation to preserve evidence arises when the party knew of or reasonably should have anticipated litigation concerning the grieved incidents. *See*, *e.g.*, *Ansley v. Wetzel*, No. 1:21-CV-528, 2023 WL 114052 (M.D. Pa. Jan. 5, 2023). Given this obligation, the Court finds no basis to issue a further order at this stage.

out on him," which he attributes to a reaggravation of back spasms caused by jumping from the top bunk. That evening, he suffered back spasms "to the point where [his] body was shaking uncontrollably," and had no feeling in his legs. A medical emergency was called, and Kennedy was "yanked out of his bed" by two unnamed C.O.s and placed in a wheelchair. He was taken to medical segregation until March 16, 2023, and then returned to the general population. When he returned, Kennedy "asked and was denied a walking instrument," although he was still having back spasms and numbness in his legs.

On March 27, 2023, Kennedy was again assigned to a top bunk. He complained to Lt. Koch, who ignored him. Another officer, C.O. Sassani, approached Kennedy's bunk to ask Kennedy to "sign papers." Kennedy had to descend from the top bunk, which caused him to "fall into the wall." Sassani "started threatening [Kennedy] calling him a liar" about his medical complaints. Kennedy and Sassani began arguing, and Sassani "told [Kennedy] to sign the papers or [Sassani] was coming in the cell to assault [Kennedy] and we were fighting." Sassani "was reprimanded" for this incident and later apologized to Kennedy.

On March 30, 2023, Kennedy was finally moved to a bottom bunk

- 4 -

on a lower tier of the prison. However, he complains of an apparently unrelated incident on April 14, 2023. Between 6:15 and 6:45 p.m., he told C.O. Smith that he was passing blood for the second time in 24 hours. Smith "said that he called Medical twice and was waiting for them to call back." A nurse arrived between 9:45 and 10:15 p.m. The nurse asked the sergeant on duty at that time, Sgt. Sell, if he had called Medical. Sell responded that he had called Medical around 7:15 p.m. Based on Kennedy's complaint to Smith, Kennedy infers that Sell was aware of his complaints at 6:40 p.m. and deliberately delayed seeking medical help for 35 minutes.

Kennedy alleges that because of the inadequate medical care, his foot "heal[e]d wrong and is now deformed," and he suffers continuous numbness. An X-ray was performed on or around May 26, 2023. On that date, an unidentified PrimeCare nurse said: "I[']m so sorry that we are just getting to this. I apologize for my co-workers that we just getting to this. This should have been done."

Kennedy identifies 12 defendants: PrimeCare, the York County Prison, Jensing, Koch, Mink, Sassani, C.O. Easton, Sgt. Figbore,

"Warden," "Deputy Warden," and "John Doe Nurse[3]." He also names an unspecified number of "John Doe C.O.s" and "York County Prison Officials." The precise scope of Kennedy's claims is unclear, but he appears to assert: (1) a claim against C.O. Sassani for inflicting cruel and unusual punishment; (2) claims against all defendants premised on their deliberate indifference to his serious medical needs; and (3) a claim for medical malpractice against "PrimeCare and its agents".

## II.   LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma*

---

[3] Kennedy's list of named defendants includes only a "John Doe" nurse, but the body of his complaint refers to the nurse as "Jane Doe." Since only one nurse is listed as a defendant, the Court infers that "John Doe" is the nurse referred to elsewhere in the complaint as "Jane Doe." For clarity, the Court will direct that "John Doe Nurse" be changed to "Jane Doe Nurse" on the docket.

*pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards).

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial

- 7 -

notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Kennedy brings this action for damages under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged

violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III. DISCUSSION

### A. Excessive Force

Kennedy asserts that C.O. Sassani violated his constitutional rights by "inflicting cruel and unusual punishment when he came into [Kennedy's] cell and assaulted him." Because the complaint indicates that Kennedy was a pretrial detainee at the time, the standard of "cruel and unusual punishment" does not apply, but Kennedy's right to be free from excessive force was guaranteed by the Fourteenth Amendment. *See Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021). To state a

claim for excessive force, "[a] pretrial detainee must show [] that the force purposely or knowingly used against him was objectively unreasonable." *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)).

The claim appears to be based on a presumption that Sassani physically assaulted Kennedy after asking Kennedy to sign paperwork. Although his description of this incident is unclear, Kennedy alleges: "Sassani then told plaintiff to sign the papers or he was coming in the cell to assault me and we were fighting." A liberal reading of this allegation, and of Kennedy's complaint in full, does not support an inference that Sassani followed through on this threat and physically fought Kennedy. *See Morrow*, 719 F.3d at 165 (court need not accept unwarranted inferences). These allegations of "verbal harassment and threats," although unpleasant, do not amount to a Fourteenth Amendment violation. *See*, *e.g.*, *Bressi v. Brennen*, No. 4:17-CV-01742, 2018 WL 3596861, at *9 (M.D. Pa. July 6, 2018), report and recommendation adopted, 2018 WL 3584687 (M.D. Pa. July 26, 2018).

## B. Deliberate Indifference

Kennedy asserts claims against all defendants based on their deliberate indifference to his serious medical needs. A pretrial detainee

can state a claim under the Fourteenth Amendment by alleging (1) "a serious medical need" and (2) "acts or omissions by [individuals] that indicate a deliberate indifference to that need." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (citations omitted). Deliberate indifference "requires both that an individual be aware of facts from which the inference could be drawn of a substantial risk and that the individual actually draws that inference." *Id*.

Several of the defendants are not properly named. Kennedy seeks to sue the York County Prison and PrimeCare, but neither is a "person" amenable to suit under Section 1983. *See, e.g., Tyrell v. Dauphin Cnty. Prison,* No. 3:14-CV-2306, 2015 WL 5553753, at *4-5 (M.D. Pa. Sept. 18, 2015). Moreover, Kennedy does not allege an unconstitutional policy[4] or custom by PrimeCare such that a Section 1983 suit could be maintained against York County by suing PrimeCare. *See, e.g., Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). Kennedy also

---

[4] Kennedy alleges generally that PrimeCare "ignored policies," but it is unclear what policies he is referring to. Although he complains of inadequate medical care, the complaint is "devoid of facts demonstrating that any perceived deficiency in his medical treatment was the result of PrimeCare's policies, customs, or practices," as opposed to the failings of individual employees. *See Tyrell*, 2015 WL 5553753 at *5.

names the Warden[5] and Deputy Warden of the York County Prison,
alleging that they were made aware of his injuries through his prison
grievances. However, awareness of a plaintiff's grievances does not
establish the requisite personal involvement for a Section 1983 lawsuit,
nor does the fact that the Warden and Deputy Warden held supervisory
roles. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

The remaining defendants are non-medical officers and Jane Doe,
the unidentified nurse. With respect to the non-medical officers, the
complaint does not support an inference of deliberate indifference.
Kennedy complained to officers that he should not be on the top bunk
because of his broken foot. The officers referred him to the medical staff,
contacted the medical staff on his behalf, or on at least one occasion,
ignored him. But Kennedy never alleges that he told any officer he was
being denied medical care or that the medical staff was refusing to
evaluate him. As they are described in the complaint, the officers'
responses suggest that they believed Kennedy had not yet made an
appropriate request for medical care or that he simply disagreed with the

___

[5] As noted, the Warden will be retained as a defendant for the
limited purpose of identifying Nurse Jane Doe.

medical staff's prior decisions. It was not deliberate indifference for the officers to assume that Kennedy would receive appropriate care from the medical staff. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison.") Even if a non-medical officer did suspect that Kennedy was not receiving appropriate care, the Third Circuit has declined to recognize a pre-trial detainee's constitutional right for officers to intervene in the denial of adequate medical care. *See Thomas*, 88 F.4th at 285.[6]

---

[6] Kennedy describes two other incidents involving non-medical officers, but neither supports an inference of deliberate indifference. First, he complains that two officers "yanked" him from his bed into a wheelchair when he had back spasms. Kennedy alleges he should have been removed on a stretcher, but it is unclear from this conclusory allegation how the alleged need for a stretcher would have been apparent to the officers. Nothing in the complaint suggests that the officers' decision to move him to medical segregation via wheelchair, rather than stretcher, represented deliberate indifference.

Second, Kennedy infers that Sgt. Sell was deliberately indifferent because he called Medical 35 minutes after Kennedy requested medical help from a different officer. Kennedy does not explain why Sell would have known of a request Kennedy made to a different officer. Regardless, a "brief delay" in medical care for an injury that was not apparently life-threatening does not itself demonstrate deliberate indifference. *See, e.g.*, *Joh v. Suhey*, 709 F. App'x 729, 730-31 (3d Cir. 2017).

As for the medical staff, Kennedy alleges he "received no support" for his injuries. Beyond this general allegation, the complaint is vague as to what medical care Kennedy requested from medical staff, who he requested it from, how often he was seen, and whether any reason was given for the denial of further care or for a change of bed placement. Kennedy's disagreement with the judgment of the medical staff, even if it rose to the level of medical malpractice, would not itself state a constitutional violation. *Spruill*, 372 F.3d at 235. Construed broadly, the complaint describes one instance[7] in which Kennedy arguably requested medical care directly from medical staff and was denied: the February 8, 2023 incident in which he removed his shoe and sock in the presence of Nurse Jane Doe to show his broken foot, and Doe "ignored this." Accordingly, Kennedy will be permitted to proceed on a claim against Jane Doe for deliberate indifference to a serious medical need.

---

[7] Kennedy quotes another nurse as apologizing on behalf of unnamed colleagues for not arranging an x-ray for Kennedy more quickly. However, this bare allegation does not support an inference of deliberate indifference. The complaint does not indicate that any individual intentionally denied an x-ray to Kennedy while under the belief that he needed one.

## C. Medical Malpractice

Kennedy seeks to bring a medical malpractice claim, but he has not filed the required certificate of merit stating that his claim is supported by expert opinion. To present a prima facie case of medical malpractice under Pennsylvania law, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission . . . fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." *Lundy v. Monroe Cnty. Corr. Facility*, No. 3:17-CV-2306, 2017 WL 9362913, at *4 (M.D. Pa. Dec. 18, 2017), report and recommendation adopted, No. CV 3:17-2306, 2018 WL 2218824 (M.D. Pa. May 15, 2018) (quoting *Simpson v. Bureau of Prisons*, No. 02-2213, 2005 WL 2387631, at *5 (M.D. Pa. Sept. 28, 2005)).

Specifically, Pennsylvania Rule of Civil Procedure 1042.3 provides:

Rule 1042.3. Certificate of Merit

(a) In any action based upon an allegation that a licensed professionals deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a

written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3. The requirements of Rule 1042.3 are deemed substantive in nature and, therefore, federal courts in Pennsylvania apply these prerequisites to a medical malpractice claim. *See Liggon-Reading v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011). More than sixty days have passed since Kennedy filed his complaint, and he has not filed a certificate of merit. Accordingly, his medical malpractice claim will be dismissed without prejudice. *See Lundy*, 2017 WL 9362913, at *6.

### D. Negligence

At various points within the complaint, Kennedy refers to his malpractice claim as "negligence medical malpractice" or "negligence malpractice." Accordingly, the Court considers whether Kennedy has stated a claim in ordinary negligence. In limited circumstances, courts

within the Third Circuit have recognized a claim for ordinary negligence when a medical provider breaches a duty that does not involve an issue of medical judgment. *See Holton v. United States*, No. 4:22-CV-487, 2024 WL 2094014, at \*2 (M.D. Pa. May 9, 2024) (listing cases); *see also Jones v. United States*, 91 F.3d 623, 625 (3d Cir. 1996) (failure to dispense prescribed medication sounded in negligence).

To state an ordinary negligence claim in the medical context, a plaintiff must establish a breach of the duty of care, causing harm to the patient, and damages suffered from that harm. *See Ortiz v. United States,* No. 1:23-cv-00203, 2024 WL 1620790, at \*19 (M.D. Pa. Apr. 15, 2024) (citing *Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019)). Kennedy's complaint indicates that on January 17, 2023, during the intake process, Jane Doe had a duty to consider Kennedy's injuries for the purpose of assessing where he would be placed, and declined to do so, which caused him to be placed on a top bunk, aggravating his foot injury. Construing all reasonable inferences in Kennedy's favor, this was not an exercise of medical judgment, but a failure of the defendant to fulfill an administrative obligation in screening the inmates. *See Medley v. United States*, No. 1:15-CV-1261, 2016 WL 3913575, at \*7 (M.D. Pa. Apr. 6, 2016)

(claim premised on "administrative negligence" in inmate placement sounded in ordinary negligence), report and recommendation adopted, 2016 WL 3908400 (M.D. Pa. July 19, 2016). Accordingly, Kennedy may proceed on a state law claim of negligence against Jane Doe.

## IV.   CONCLUSION

The single viable defendant is identified only as Jane Doe.[8] "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009). However, it does not appear that the complaint contains sufficient information to serve the unnamed defendant. Under these circumstances, it is appropriate to direct service of the complaint on the Warden of the York County Prison, for the limited purpose of identifying the defendant through discovery. *See*, *e.g.*, *Murray v. Ohio Dep't of Corr.*, No. 1:14-CV-168, 2014 WL 1382401, at *4 (S.D. Ohio Apr. 8, 2014); *Mosby v. Doe*, No. 08-CV-677-SLC, 2009 WL 192502, at *1 (W.D. Wis. Jan. 27, 2009). An appropriate

---

[8] Because only one nurse is listed as a defendant, the only plausible inference is that Kennedy attributes the January 17 and February 8 incidents to the same nurse. If Kennedy discovers otherwise, he may name the second nurse in an amended complaint.

order follows.

Dated: October 23, 2024                          *s/Joseph F. Saporito, Jr.*
                                                 JOSEPH F. SAPORITO, JR.
                                                 United States District Judge