UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SHANE KENNEDY,

     Plaintiff,

     v.

PRIMECARE, INC., *et al.*,

     Defendants.

CIVIL ACTION NO. 1:24-cv-00841

(SAPORITO, J.)

## MEMORANDUM

Plaintiff Shane Kennedy, presently incarcerated at SCI-Chester, has filed an amended complaint (Doc. 25) against ten defendants affiliated with the York County Prison regarding their treatment of his broken foot and other injuries. The Court will permit Kennedy to proceed on certain ordinary negligence and Fourteenth Amendment claims, and claims for declaratory relief under the Pennsylvania Constitution, but dismiss all other claims.

## I. BACKGROUND

Upon screening of Kennedy's original complaint pursuant to 28 U.S.C. § 1915A, the Court found that it stated viable claims against only one defendant, an unidentified nurse. The Court permitted Kennedy to seek discovery from the Warden of the York County Prison to identify the

relevant individual(s) and file this amended complaint. *See* (Docs. 13, 14).

The amended complaint alleges as follows: On December 10, 2022, before his incarceration, Kennedy suffered a work accident that left him with a broken foot, concussion, lacerations to his head and ribs, and a sprained and bruised back. On January 17, 2023, he was arrested and taken to the York County Prison. During the intake process, he told Anita Wolf-Folk, a nurse from PrimeCare Medical, Inc. ("PrimeCare"), the prison medical provider, about his injuries. However, Wolf-Folk "released [Kennedy] to General Population with no medical restrictions," despite [Kennedy] complaining about his various injuries and "serious pain." A scheduled follow-up with an orthopedist[1] on January 23, 2023, was "ignored" by unnamed medical staff.

For intermittent periods between February and March 2023, Kennedy was assigned to sleep on a top bunk. There was no ladder on the bed, so Kennedy repeatedly had to jump "approximately 5 feet" from the bed to the concrete floor, which caused him pain and "further injur[ed]" his broken foot. Kennedy alleges that he "made all of the defendants

---

[1] It is unclear whether Kennedy is referring to an outside appointment arranged prior to his arrest, or an appointment arranged by the prison medical staff after intake.

aware of his broken foot and other injuries" and the lack of a ladder on the top bunk. Specifically, he alleges that he "informed the Medical Department about his broken foot," "told many C/Os about his foot," and "physically show[ed] York County Officials his broken foot, along with [Wolf-Folk]." These individuals "completely ignored his complaints/pleas."

On February 8, 2023, he told Lt. Jensing and Medical Assistant Laura Foust that he had a broken foot and "can't be housed on the top bunk," removing his sock to show that his foot was "clearly noticeably broken." However, both "ignored" the injury, and Foust assigned him to the top bunk and top tier of the prison.

On February 9, during a strip search, Kennedy complained to C.O. Mink about his foot. Mink "look[ed] down at [Kennedy's] foot and sa[id] all he see[s] are black toes and a crooked toe," laughed, and then said there was nothing he could do because he was "not in charge of the moves."

On February 24, he complained to unnamed correctional officers about his foot and his placement within the prison, but these officers "told him that they have nothing to do with the moves or restrictions and that

it is Medical and Classification who does that." "[A] few" officers, including C.O.s Easton and Figbore, "said that they called medical informing them" that Kennedy had "what appears to be a broken foot." A different, unnamed officer told him that "if he didn't take [the top] bunk he would go to the [Behavioral Adjustment Unit] to get re-classified and that would take up to five (5) days."

On March 12, 2023, Kennedy "had an incident where his back gave out on him," which he attributes to jumping from the top bunk. He suffered back spasms "to the point where [his] body was shaking uncontrollably," and had no feeling in his legs. A medical emergency was called, and Kennedy was "yanked out of his bed" by two officers and placed in a wheelchair. He was taken to medical segregation until March 16, 2023, and then returned to the general population. When he returned, Kennedy "asked[] and was denied a walking instrument," although he was still having back spasms and numbness in his legs.

On March 27, 2023, during a strip search, Kennedy showed Lt. Koch his foot and "explain[ed] that he can't be housed on the top tier or top bunk." Koch "totally ignored [Kennedy] and ordered [him] to reside on the top tier-top bunk." At some point after that date, C.O. Sassani

approached Kennedy's bunk to ask Kennedy to "sign some papers." Kennedy was hesitant to descend from the top bunk because of his injuries. Sassani "started threatening [Kennedy,] calling him a liar" about his medical complaints. Kennedy and Sassani began arguing, and Sassani "ordered [Kennedy] to sign the papers or [Sassani] was coming into [Kennedy's] cell to him." Kennedy ultimately jumped from the top bunk, which caused him to "fall into the wall" and aggravate his injuries. "Days later," Sassani allegedly apologized to Kennedy for verbally "assaulting" him.

On March 30, 2023, Kennedy was finally moved to a bottom bunk on a lower tier of the prison. However, he complains of an apparently unrelated incident on April 14, 2023. Between 6:15 and 6:45 p.m., he told C.O. Smith that he was passing blood for the second time in 24 hours. Smith "said that he called Medical twice and was waiting for them to call back." A nurse arrived between 9:45 and 10:15 p.m. The nurse asked the sergeant on duty, Sgt. Sell, if he had called Medical. Sell responded that he had called Medical around 7:15 p.m.[2] Based on the timing of his

_____

[2] Kennedy's description of this event is unclear, but he seems to allege that Sell was on duty during the entire incident and therefore *(continued on next page)*

complaint to Smith, Kennedy infers that Sell was aware of his complaints at 6:40 p.m. and deliberately delayed seeking medical help for 35 minutes.

Kennedy alleges that because of inadequate medical care, his foot "heal[e]d wrong and is now deformed," and he suffers "severe pain and arthritis," along with "continuous numbness." An X-ray was performed on or around May 26, 2023. An unidentified PrimeCare nurse allegedly said: "I[']m so sorry that we are just getting to this. I apologize for my co-workers that we just getting to this. This should have been done."

Kennedy seeks declaratory and monetary relief, and names ten defendants: PrimeCare, Sassani, Wolf-Folk, Foust, Jenseng, Koch, Mink, Easton, Figbore, and the "Deputy Warden" (presumably of the York County Prison). Construed broadly[3], Kennedy asserts the following

---

responsible for following up on Smith's call to Medical. Between 9:10 and 9:25 p.m., Kennedy yelled to Sell during his rounds about this medical issue. Sell replied: "[W]hat do you want me to do about it[?]"

[3] Several of Kennedy's claims are internally contradictory or premised on unrelated legal theories. *See*, *e.g.*, (Doc. 25 at 20) (PrimeCare "committed negligence under the common law doctrine of *respondeat superior*. [PrimeCare's] involvement in this case amounts to a 1983 violation under a failure to train theory . . ."). The Court interprets Kennedy's claims broadly in accordance with the requirement that *pro se*
*(continued on next page)*

claims: (1) an excessive force claim against Sassani based on their confrontation in his cell; (2) claims of deliberate indifference to a serious medical need against Foust and Wolf-Folk; (3) state law negligence claims against Wolf-Folk and PrimeCare; (4) "failure to train" claims against an unspecified number of defendants; and (5) violations of the Pennsylvania Constitution's cruel and unusual punishment clause by all defendants.

## II.    LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see*

---

filings be liberally construed. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

*generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards).

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the

complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Kennedy brings this action for damages under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat*

*superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III.    DISCUSSION

### A. Excessive Force

Kennedy asserts that Sassani violated the Fourteenth Amendment "when he used excessive force on [Kennedy] by forcing himself into [Kennedy] and verbally assaulting him." Because the complaint indicates that Kennedy was a pretrial detainee at the time, Kennedy's right to be free from excessive force was guaranteed by the Fourteenth Amendment. *See Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021). To state a claim for excessive force, "[a] pretrial detainee must show [] that the force purposely or knowingly used against him was objectively unreasonable." *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97

(2015)).

As explained in the Court's prior memorandum, "verbal harassment and threats," although unpleasant, do not amount to a Fourteenth Amendment violation. *See* (Doc. 13 at 10); *Bressi v. Brennen*, No. 4:17-CV-01742, 2018 WL 3596861, at *9 (M.D. Pa. July 6, 2018), report and recommendation adopted, 2018 WL 3584687 (M.D. Pa. July 26, 2018). Kennedy's claim is unclear, but he seems to assert that Sassani, by entering his cell and ordering him to dismount from the bed, effectively used "force" that caused him to jump from the bed and aggravate his pre-existing injury. Even accepting such an expansive definition of force, that would not be "excessive" force. *See Mack v. Bucks Cnty.*, No. 23-CV-4386, 2024 WL 4905200, at *5 (E.D. Pa. Nov. 27, 2024) (*de minimis* force does not violate the Fourteenth Amendment).

Further, Sassani's order to descend was not "objectively unreasonable" under the circumstances described here. The complaint does not suggest that Sassani sought to impose punishment; to the contrary, Kennedy claims that Sassani asked him to descend for the purpose of signing paperwork, and later apologized because "he thought [Kennedy] was making his injuries and restrictions up." Given that

Kennedy was located on (and assigned to) the top bunk at the time of this incident, Sassani's assumption that he could safely descend would have been entirely reasonable. *See Kingsley v. Hendrickson,* 576 U.S. 389, 399 (2015) ("A court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer.").

### B. Deliberate Indifference

Next, Kennedy asserts deliberate indifference claims against Foust and Wolf-Folk, the two nurses who allegedly "ignored" his broken foot. A pretrial detainee can state a claim under the Fourteenth Amendment by alleging (1) "a serious medical need" and (2) "acts or omissions by [individuals] that indicate a deliberate indifference to that need." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (citations omitted). Deliberate indifference "requires both that an individual be aware of facts from which the inference could be drawn of a substantial risk and that the individual actually draws that inference." *Id.*

Kennedy has plausibly alleged that Foust and Wolf-Folk[4] showed

---

[4] Although most of Kennedy's discussion of "Deliberate Indifference" claim is directed to Foust, he alleges within the same count that Wolf-Folk's "standard of care . . . constituted 'reckless and callous indifference' . . . which is basically the same standard of showing
*(continued on next page)*

deliberate indifference to a serious medical need, either by failing to provide or arrange for medical treatment or failing to reevaluate Kennedy when he continued to complain of pain. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ("We have found 'deliberate indifference' . . . where the prison official [] knows of a prisoner's need for medical treatment but intentionally refuses to provide it . . . [or] persists in a particular course of treatment in the face of resultant pain and risk of permanent injury.") (quotations and citations omitted).[5]

## C. Negligence

The scope and intended defendants of Kennedy's negligence claims

---

deliberate indifference." (Doc. 25 at 17). Upon review, the Court construes Kennedy as asserting deliberate indifference claims against both nurses.

[5] Kennedy does not directly assert deliberate indifference claims against any other defendants, but to the extent they were intended, he fails to state a claim for the reasons explained in the prior memorandum. *See* (Doc. 13 at 12-14). In brief, prison officers were not deliberately indifferent for failing to intervene in Kennedy's medical care or declining to override the judgment of the medical staff as to where he should be placed within the prison. *See Thomas*, 88 F.4th at 285; *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Nor does the complaint support an inference that Sgt. Sell intentionally delayed seeking medical care when Kennedy was passing blood, or that any "brief delay" in seeking care amounted to deliberate indifference. *See Joh v. Suhey*, 709 F. App'x 729, 730-31 (3d Cir. 2017).

are unclear. To the extent he asserts medical negligence claims against any defendant, those claims will be dismissed. As described in the prior memorandum, any claim of medical negligence or medical malpractice would require Kennedy to file a Certificate of Merit within 60 days of the original complaint, which was filed on May 21, 2024. *See* (Doc. 13 at 15-16); Pa. R. Civ. P. 1042.3. That time has already elapsed and is not reset by an amended complaint. *See Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 255 (E.D. Pa. 2008) (listing cases). Further, a court can only extend the deadline for a maximum of 60 days, *see* Pa. R. Civ. P. 1042.3(d), and that period has also elapsed.

Kennedy separately asserts a negligence claim against Wolf-Folk based on her failure to properly screen him during jail intake. In certain circumstances, courts have recognized a claim for ordinary negligence when a medical provider breaches a duty that does not involve an issue of medical judgment. *See Holton v. United States*, No. 4:22-CV-487, 2024 WL 2094014, at *2 (M.D. Pa. May 9, 2024) (listing cases). The plaintiff must establish a breach of the duty of care, causing harm to the patient, and damages suffered from that harm. *See Ortiz v. United States,* No. 1:23-cv-00203, 2024 WL 1620790, at *19 (M.D. Pa. Apr. 15, 2024) (citing

*Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019)).

Here, Kennedy alleges that he informed Wolf-Folk of his injuries during the "intake process," but Wolf-Folk "ignored" and "failed to attend" to these injuries. This could be construed as a breach of duty premised on outright failure to screen Kennedy, rather than improper medical judgment. *See Medley v. United States*, No. 1:15-CV-1261, 2016 WL 3913575, at *7 (M.D. Pa. Apr. 6, 2016) (allegations of "administrative negligence in the screening and placement of inmates" sounded in ordinary negligence), report and recommendation adopted, 2016 WL 3908400 (M.D. Pa. July 19, 2016). Noting the requirement of liberal construction at the pleading stage, the Court will permit Kennedy to proceed on a claim of ordinary negligence against Wolf-Folk. Because Wolf-Folk was allegedly a PrimeCare employee, Kennedy may also proceed on a negligence claim against PrimeCare on a theory of *respondeat superior*. *See*, *e.g.*, *Ponzini v. Monroe Cnty.*, No. 3:11-CV-00413, 2015 WL 5123635, at *15 (M.D. Pa. Aug. 31, 2015); *Cortlessa v. Cnty. of Chester*, No. CIVA. 04-1039, 2006 WL 1490145, at *3 (E.D. Pa. May 24, 2006).

### D. Failure to Train/Municipal Liability

Kennedy asserts a Section 1983 claim against PrimeCare under a "failure to train" theory. A plaintiff can assert a claim against a private prison medical provider by showing that "a custom or policy" caused the alleged constitutional violation. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). However, Kennedy alleges no facts indicating that PrimeCare failed to train any of its employees. He concludes from the allegedly deficient performance of Wolf-Folk and Foust that it is "evident" PrimeCare failed to train them, but the complaint lacks any allegations about their training or the way in which it was supposedly deficient. Nor does he allege any other PrimeCare policy or custom that caused the violations: to the contrary, he alleges that PrimeCare policy requires giving "patients access to care . . . to meet their serious medical, dental, and mental health needs," and that this "policy was not followed by either nurse." (Doc. 25 at 21). Essentially, this is an attempt to assert *respondeat superior* liability, which although permissible for Kennedy's negligence claim, is not permitted for a Section 1983 claim. *See Natale*, 318 F.3d at 583.

Kennedy also asserts liability for the York County Prison and an

unspecified number of municipal officials and entities[6], for some combination of Sassani's allegedly excessive force, the nurses' failure to treat his broken foot, and non-medical officers' response to his complaints. Any such claim fails because these entities were not listed as defendants, a prison is not a "person" subject to suit under Section 1983 (*see Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013)), and no facts show that any alleged violations were the result of municipal policies or practices.

### E. Pennsylvania Constitution

Finally, Kennedy asserts in a separate count that "all defendants violated . . . the Pennsylvania Constitution's Cruel Punishment Clause." "[T]he rights secured by the Pennsylvania [Constitution's] prohibition against 'cruel punishments' are coextensive with those secured by the Eighth and Fourteenth Amendments," meaning that it does not offer any greater protection than the federal equivalent. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 73-74 (1982). Pennsylvania does not provide a private right of action for monetary damages based on violations of its

---

[6] Any claim intended against prison administrators, including the Warden and Deputy Warden, separately fails for Kennedy's failure to allege their personal involvement. *See Rode*, 845 F.2d at 1207.

Constitution, but a plaintiff may seek declaratory relief. *See Spriggs v. Salamon*, No. 1:23-CV-01756, 2024 WL 5239879, at *5-6 (M.D. Pa. Dec. 27, 2024); *Gibson v. SCI Coal Twp. Med. Dep't*, No. 1:22-CV-00618, 2023 WL 2390676, at *10 (M.D. Pa. Mar. 7, 2023) (listing cases). Thus, Kennedy may proceed on claims for declaratory relief under the Pennsylvania Constitution against Foust and Wolf-Folk, the two individuals against whom he has stated Fourteenth Amendment deliberate indifference claims.

## IV.    CONCLUSION

For the reasons described above, Kennedy will be permitted to proceed on ordinary negligence claims against Wolf-Folk and PrimeCare, Fourteenth Amendment deliberate indifference claims against Foust and Wolf-Folk, and claims for declaratory relief under Article I, Section 13 of the Pennsylvania Constitution against Foust and Wolf-Folk. An appropriate order follows.


Dated: March 28, 2025                    *s/Joseph F. Saporito, Jr.*
                                          JOSEPH F. SAPORITO, JR.
                                          United States District Judge