## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SHANE KENNEDY,

      Plaintiff,

      v.

PRIMECARE MEDICAL,
INC., *et al.*,

      Defendants.

CIVIL ACTION NO. 1:24-cv-00841

(SAPORITO, J.)

## ORDER

Shane Kennedy proceeds against three defendants affiliated with the York County Prison, claiming that they failed to provide proper medical care and accommodation for his broken foot while he was incarcerated there. All parties have moved for summary judgment. (Docs. 42, 46). Because the record does not support Kennedy's claims that the defendants ignored his injuries, the defendants are entitled to summary judgment.

## I. BACKGROUND

This case arises from injuries that Kennedy sustained at work in December 2022, prior to his incarceration. He had been receiving treatment from an orthopedist, but on January 17, 2023, he was arrested

and incarcerated at the York County Prison. As relevant here, the operative complaint[1] alleges that nurse Anika Wolf-Folk "ignored" his injuries during the intake process, and that Wolf-Folk and fellow nurse Laura Foust failed to accommodate or treat his injuries despite his complaints. *See* (Doc. 25). Kennedy was permitted to proceed on state-law claims of ordinary negligence against Wolf-Folk and her employer, PrimeCare Medical, Inc.; Fourteenth Amendment claims of deliberate indifference to a serious medical need against Foust and Wolf-Folk; and an attendant claim for declaratory relief under the Pennsylvania Constitution. *See* (Docs. 26, 27).

After the close of discovery, all parties moved for summary judgment; however, Kennedy did not respond to defendants' motion within the time allotted. The Court issued an order extending the response deadline to December 17, 2025, and warning that the motion would be deemed unopposed if he did not respond. (Doc. 52). Despite this

---

[1] Although Kennedy's initial complaint did not identify any viable defendants, he was permitted to take discovery from the Warden of the York County Prison to identify the medical staff who treated him, and to file an amended complaint. *See* (Docs. 13, 14).

order, Kennedy has not filed a response to the motion.[2]

## II.   LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence

---

[2] On February 24, 2026, the Court received a letter from Kennedy in which he requested "copies of any and all filings pertaining" to this case. The Clerk mailed a letter to Kennedy that acknowledged his request and described the process for obtaining copies of filings. *See* (Docs. 53, 54). Kennedy did not respond to that letter.

of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). Although defendants' motion is unopposed, the Court must still review the record to establish "that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage*

*Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990).

## III.   MATERIAL FACTS

Kennedy's motion for summary judgment does not include a statement of material facts that complies with the local rules of this district. *See* (Docs. 42, 45); M.D. Pa. L.R. 56.1 ("A motion for summary judgment . . . shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."). However, to resolve this matter on the merits, we have reviewed all evidence and argument that the parties have submitted. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Where Kennedy's assertions of fact are not supported by evidence in the record, those statements are disregarded; where he has failed to contest an evidentially supported fact by presenting contrary evidence, that fact is deemed admitted for purposes of these motions. *See* Fed. R. Civ. P. 56(e).

The record indicates as follows: In December 2022, before he was incarcerated, Kennedy fell off a ladder while working on drywall and sustained a "mildly displaced fracture" in his left foot. Medical records

indicate that he was released from an emergency room with instructions to ice and elevate his foot, given a "postop shoe for comfort," and directed to follow up with an orthopedist. *See* (Doc. 45-1, Doc. 49-2). On January 4, 2023, Kennedy met with an orthopedic provider, who signed a "return to work" note directing that Kennedy wear a walking boot and receive "seated breaks every 2 hours for 15 minutes." A follow-up appointment was scheduled for January 24. *See* (Docs. 45-5 through 45-7).

On January 17, 2023, a week before the follow-up appointment, Kennedy was arrested and incarcerated at the York County Prison. At intake, he was examined by defendant Wolf-Folk, a nurse employed by PrimeCare Medical, Inc. ("PrimeCare"), the prison medical provider. Kennedy reported that his left foot was broken and that he received care at Hanover Hospital on December 3, 2022. Kennedy also reported that he "wears a walking boot," but Wolf-Folk noted that he was not wearing one at the time, and "observed [Kennedy] walking and standing for extended periods of time on said foot." Kennedy was marked for a "routine" referral for additional care at the prison. *See* (Doc. 47-2 at 4-12). Kennedy signed an authorization form permitting "Hanover Hospital" to release medical records to the prison. (Doc. 45-1 at 5; Doc. 49-2). Kennedy was also

instructed in how to seek medical care at the prison through a sick call. *See* (Doc. 47-2 at 21).

The following day, Kennedy was seen by CRNP Aba Fahnbulleh, who is not a party to this case, for an "Initial Detox Visit[3] . . . and 14-day [physical exam]." The record of this appointment does not refer to any complaint about Kennedy's foot. Fahnbulleh performed a physical exam of Kennedy, noting that he presented with a "unremarkable" gait, and cleared him to work at the facility. *See* (Doc. 47-2 at 13-15, 28-29). On January 27, Kennedy had a second physical exam with Fahnbulleh during a "Follow-up Detox Visit." By this time, the prison had received "medical documents from UPMC [dated] 12/4/2022." (*Id.* at 28). There is no indication that Kennedy complained of foot issues, and Fahnbulleh noted that he had a "fast get-up" and "[normal] gait." Kennedy was advised to follow up as needed.

On February 8, Kennedy was seen by defendant Foust, a nurse, following an "altercation with another [inmate]." Kennedy "appear[ed] to be in no distress [and] denie[d] any injuries," and Foust did not observe

---

[3] At the initial screening, Kennedy reported that he had been taking suboxone as a form of medication-assisted treatment, and he was placed on "Detox Status." *See* (Doc. 47-2 at 3-4, 12).

any. (Doc. 47-2 at 17-18).

The record does not indicate that Foust or Wolf-Folk had any further involvement in Kennedy's medical care. On March 13, 2023, another member of the medical staff restricted Kennedy to a "[low bunk]/low tier" of the prison because he hurt his back while "working out on the block (squats/pushups)." *See* (Doc. 47-2 at 27-28).

On May 18, 2023, Kennedy submitted a sick call request: "I have a broken foot I need it checked." (Doc. 47-2 at 53). He was evaluated by non-party nurse Meghan Crook on May 22. Crook reviewed the hospital notes regarding Kennedy's broken foot, but observed no present "bruising, swelling, or deformities" in Kennedy's foot. Although Kennedy was walking without difficulty and had full range of motion in his toes, he complained "that the foot continued to cause him pain, especially when [descending] from a top bunk." Crook granted Kennedy low bunk/low tier status for two weeks, and directed "repeat [X-rays]," which showed "no fractures." (*Id.* at 31-32).

## IV.   DISCUSSION

### A. Negligence

Kennedy was permitted to proceed on claims of ordinary negligence

against Wolf-Folk and PrimeCare, because the complaint supported a plausible inference that Wolf-Folk had "outright fail[ed] to screen" Kennedy. *See* (Doc. 26 at 13-15); *Holton v. United States*, No. 4:22-CV-487, 2024 WL 2094014, at *2 (M.D. Pa. May 9, 2024) (discussing negligence claims against medical providers that did not involve issues of medical judgment). However, the record makes clear that Wolf-Folk (and other providers) did screen Kennedy; any disagreement with Wolf-Folk's medical conclusions during the screening is not an issue of ordinary negligence.[4] Accordingly, defendants are entitled to summary judgment on this claim.

### B. Fourteenth Amendment

Defendants are also entitled to summary judgment on Kennedy's

---

[4] Any intended medical negligence claim was dismissed at the pleading stage for Kennedy's failure to timely file a Certificate of Merit as required by Pennsylvania law. *See* (Doc. 26 at 14); Pa. R. Civ. P. 1042.3. After that dismissal, the United States Supreme Court determined that a similar requirement under Delaware law could not apply in federal court because it conflicts with federal pleading standards. *See Berk v. Choy*, 607 U.S. 187 (2026). Although Kennedy continues to make arguments sounding in medical negligence, *see* (Doc. 42), he has not sought relief from the order dismissing his medical negligence claims. Regardless, the record of this case does not show that his medical treatment fell short of the applicable standard of care or that he suffered harm from any perceived error in the treatment of his injuries.

deliberate indifference claims against nurses Foust and Wolf-Folk. Although Kennedy's medical care claims fall under the Fourteenth Amendment because he was a pre-trial detainee, such claims are evaluated under the same standard as the Eighth Amendment claims of convicted prisoners; the plaintiff must show that he was harmed by the defendant's deliberate indifference to his serious medical needs. *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Deliberate indifference "requires both that an individual be aware of facts from which the inference could be drawn of a substantial risk and that the individual actually draws that inference." *Thomas*, 88 F.4th at 281.

Kennedy contends that Foust and Wolf-Folk were deliberately indifferent in failing to treat or accommodate his broken foot. He points to the fact that they knew from medical records that he had broken his foot but neglected to give him low bunk/low tier placement between January 17 and March 13, which he says caused him pain and aggravated his injuries. However, these arguments rely on facts and assumptions that are not supported by the record.

First, Kennedy argues that the medical records he gave to the

prison showed his need for ongoing treatment or special accommodation, but they did not. The only medical record Kennedy offered to the defendants was the emergency room record from December 4, 2022, which instructed him to ice and elevate the foot and wear a boot for "comfort."[5] This record was not available to the medical staff who screened him; regardless, it did not show that he would be unfit to sleep on a top bunk six weeks later. More importantly, neither Foust nor Wolf-Folk saw a need for treatment or accommodation for Kennedy's foot when they personally examined him. Even if the nurses' assessments had been incorrect, such misdiagnosis would not constitute deliberate indifference. *See, e.g., Coudriet v. Vardaro*, 545 F. App'x 99, 103 (3d Cir. 2013).

While Kennedy alleges that he was constantly complaining to prison staff about pain and injury to his foot between January 17 and

---

[5] Kennedy directs the Court to records of his orthopedic treatment in January 2023, but there is no evidence that he discussed those records with the defendants or requested that they review them. The only records noted by the prison medical staff, and the only ones that Kennedy authorized to be released to them at intake, were the records from "Hanover Hospital." *See* (Doc. 45-1 at 5, Doc. 47-2 at 5, 10, Doc. 49-2). Even if the orthopedic records were ultimately transmitted to the prison, there is no evidence that Foust and Wolf-Folk were aware of them when they examined Kennedy.

March 13, there is no evidence of such complaints in the record.[6] Rather, Kennedy's documented sick calls from between January 17 and March 13 concerned his access to substance abuse treatment, an "STD check & HIV check," food allergies, and vaccination for work release. *See* (Doc. 47-2 at 33-43). The medical staff eventually moved Kennedy to the lower tier on March 13, but that was to accommodate a back injury he sustained while doing squats[7]; there is no record of him complaining about his foot during those appointments. On this record, there is no reasonable inference that Foust and Wolf-Folk were deliberately indifferent to Kennedy's medical needs during their limited interactions with him.

Because Kennedy's Fourteenth Amendment claims cannot proceed, and the Pennsylvania Constitution's own "prohibition[s] against 'cruel

---

[6] Kennedy appears to consider the allegations in his complaint as equivalent to evidence, but an unverified complaint is not competent evidence at the summary judgment stage. *See Travillion v. Wetzel*, No. 24-1763, 2025 WL 971669, at *2 (3d Cir. Apr. 1, 2025). Similarly, Kennedy's own unverified responses to written discovery requests (Doc. 50) are also not evidence. *See, e.g., Guffey v. A.W. Chesterton Co.*, No. 11-00161, 2012 WL 5395035, at *1 n.1 (E.D. Pa. Aug. 28, 2012) ("[O]nly verified discovery responses may be considered as evidence in connection with a summary judgment brief, as unverified responses constitute inadmissible hearsay.").

[7] Kennedy also does not explain how doing squats for exercise would be consistent with his alleged inability to safely descend from a bunk bed.

punishments' are coextensive with those secured by the Eighth and Fourteenth Amendments," *see Commonwealth v. Zettlemoyer*, 500 Pa. 16, 73-74 (1982), defendants are also entitled to summary judgment on his claim for declaratory relief under the Pennsylvania Constitution.

## V.   CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT**:

1.    Kennedy's motion for summary judgment (Doc. 42) is **DENIED**, and defendants' motion for summary judgment (Doc. 46) is **GRANTED**. The Clerk is directed to enter **JUDGMENT** in favor of defendants and against Kennedy.

2.    The Clerk is directed to mark this case as **CLOSED**.

Dated: July 24, 2026              *s/Joseph F. Saporito, Jr.*
                                  JOSEPH F. SAPORITO, JR.
                                  United States District Judge

- 13 -